UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH W. MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14-CV-804-JAR |
| ) | |
| UNITED COLLECTIONS BUREAU, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on cross motions for summary judgment. (Doc. Nos. 19, 56) Plaintiff Joseph W. Martin ("Plaintiff") brings this action against Defendant United Collections Bureau, Inc. ("UCB"), asserting claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692g and 1692c(b). The motions are fully briefed and ready for disposition.

As a threshold matter, Plaintiff moves to strike portions of UCB's Statement of Uncontroverted Material Facts and portions of UCB's exhibits and supporting affidavit on the grounds that they contain inadmissible evidence and legal conclusions.[1] (Doc. No. 35) Motions to strike are not favored and infrequently granted, because they propose a drastic remedy. Stanbury Law Firm, P.A. v. Internal Revenue Service, 221 F.3d 1059, 1063 (8th Cir.2000). Nevertheless, resolution of such a motion lies within the broad discretion of the Court. Id. Rule 12(f) authorizes a court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f).

---

[1] Specifically, Plaintiff requests the Court strike ¶¶ 3, 4, 7, 10 and 16 of UCB's Statement of Undisputed Facts; ¶¶ 5, 8, 10, 13, 16 and 18, or the entirety of the affidavit of Colene McInch, marked as Exhibit A to UCB's Statement of Undisputed Facts; and Exhibits 2 and 3 thereof.

A "pleading" as defined in Rule 7(a) does not include statements of fact submitted in support of, or in opposition to, a motion for summary judgment. Thus, there is no specific authority in the Federal Rules for striking a party's statement of uncontroverted facts. See Nelson v. Special Administrative Bd. of St. Louis Public Schools, 2012 WL 5508394, at *l-2 (E.D. Mo. Nov. 14, 2012) (citing United States v. Hawley, 812 F.Supp.2d 949, 962 n. 2 (N.D. Iowa 2011) (denying a motion to strike a statement of material facts offered in opposition to a motion for summary judgment)). Moreover, a motion for summary judgment will not fail merely because some of the statements contained in a supporting affidavit may be inadmissible. Scott v. Ranch Roy-L, Inc., 182 S.W.3d 627, 635-36 (Mo. Ct. App. 2005) (citing Jones v. Landmark Leasing, 957 S.W.2d 369, 376 (Mo. Ct. App. 1997)). "A court may look to the remaining portions of the affidavits and pleadings in a case to see if there is a basis to support the summary judgment." Id.

Accordingly, Plaintiff's motion to strike will be denied. The Court will examine the entire record, including UCB's Statement of Undisputed Facts and any properly supported factual contentions, to determine whether there are genuine disputes regarding material facts precluding the entry of summary judgment. See Fabian v. St. Louis Rams Partnership, 2014 WL 222816, at *1 (E.D.Mo. Jan. 21, 2014). Mere arguments, speculation and/or conclusions fail to create a genuine issue of material fact sufficient to defeat summary judgment.

Similarly, UCB moves for sanctions against Plaintiff based on his violations of this Court's March 3, 2015 Order and discovery obligations under Fed.R.Civ.P. 26(a). Plaintiff sought to subpoena the three credit reporting agencies ("CRAs"), Experian, TransUnion and Equifax, for documents relating to Plaintiff and one Joseph A. Martin, including their credit reports and any correspondence from UCB related to those reports. (Doc. No. 41) Plaintiff also requested an extension of time to complete discovery. (Doc. Nos. 47, 50) Finding that Plaintiff's

requests were made prior to the close of discovery, albeit late, the Court allowed the subpoenas to issue to the CRAs and extended the discovery deadline for that limited purpose. (Doc. No. 59)

In its motion, UCB states that despite the Court's Order extending the discovery period solely for the purpose of requesting documents from the CRAs, Plaintiff continued to pursue discovery from third parties Gateway Emergency Physicians, LLP, and Kroll Factual Data. He then filed his summary judgment motion and statement of material facts which include numerous exhibits that were never disclosed pursuant to Rule 26(a), never produced in response to UCB's discovery requests, and prohibited by this Court's order. (Doc. No. 60 at 5-6) UCB seeks an order striking Plaintiff's motion for summary judgment, precluding him from using any documents or information not timely disclosed to UCB during the discovery period, and awarding it its fees and costs incurred in bringing its motion for sanctions and defending against Plaintiff's motion for summary judgment.

While Plaintiff may have violated the spirit and intent of this Court's order permitting discovery for a limited purpose, the Court finds no resulting prejudice to UCB given the Court's ruling herein. UCB's motion for sanctions will, therefore, be denied.

**Legal standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir.1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether

summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir.1988).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal–Mogul Ignition Co., 519 F.Supp.2d 929, 942 (S.D.Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir.1983). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir.1993) (quoting Anderson, 477 U.S. at 251–52)).

**Facts**

On June 6, 2013, while in the process of applying for a home loan, Plaintiff learned of three collection accounts listed on his Residential Merged Credit Report obtained by Eagle Bank and Trust Company. The accounts were administered by Maximum Recovery Specialists, Inc., Consumer Collection Management, and UCB. The debt associated with the account administered by UCB arose from a medical bill owed to Gateway Emergency Physicians, LLP ("Gateway") by an individual by the name of Joseph A. Martin, whose social security number ends in 7519.[2] (First

---

[2] Plaintiff is Joseph W. Martin and his social security number ends in 7915. (UCB's Statement of Undisputed Facts ("DSOF"), Doc. No. 21 at ¶ 3)

Amended Complaint ("FAC"), Doc. No. 13 at ¶ 8; Affidavit of Joseph W. Martin ("Martin Aff."), Doc. No. 58 at ¶ 9)[3]

The evidence of record demonstrates that on or about March 24, 2009, Gateway placed with UCB a debt for collection incurred by one Joseph A. Martin, whose social security number ends in 7519. (Doc. No. 23-1) From March 24, 2009 through December 23, 2013, UCB maintained an account number 25230191 associated with this debt. (Id.) The record further demonstrates that on March 28, 2009 and May 27, 2009, UCB attempted to contact Joseph A. Martin for the purpose of collecting the debt, but was unsuccessful. (Id. at lines 66, 75) No further attempts to contact Joseph A. Martin were made after May 27, 2009. (Id.)

On July 18, 19 and 25, 2009, UCB packaged the credit information on account number 25230191 to be reported to the three primary CRAs, Equifax, Experian and TransUnion. (Id. at lines 77-79) On August 13, 2009, UCB transmitted the credit information pertaining to the debt incurred by Joseph A. Martin to the CRAs. (Doc. No. 23-2) This information did not involve or relate to Plaintiff. On December 5, 2009, UCB cancelled all collection activity on the debt. (Doc. No. 23-1 at lines 82-82)

On June 25, 2013, Plaintiff's counsel mailed a letter to UCB stating that Plaintiff was not the correct consumer with regard to the debt and requesting the removal of this information from his credit report. (Doc. No. 21-6) Upon receipt of counsel's letter, UCB electronically submitted an Automated Universal Data Form ("AUD") to Experian, Equifax, and Trans Union on July 3, 2013, requesting that any trade lines regarding the debt be removed from Plaintiff's credit report. (Doc. No. 23-3) UCB then sent a letter to Plaintiff's counsel on July 19, 2013 stating it had

---

[3] Plaintiff disputes the existence of "Joseph A. Martin" in his summary judgment briefing; however, this is not material to the resolution of the pending motions.

"electronically notified all three credit reporting agencies to remove any negative trade line that may be appearing on the credit report of your client." (Doc. No. 21-1 at 8)

Plaintiff alleges the collection account appeared on his credit reports from approximately July 2009 through July 2013. He further alleges he was denied the loan as the direct and proximate result of the derogatory collection account from UCB that was wrongfully placed on his credit report(s). (FAC at ¶ 9)

**FDCPA**

The FDCPA is designed "to eliminate abusive debt collection practices by debt collectors" and "to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. The FDCPA is a strict liability statute, and a consumer need not show intentional conduct by the debt collector to establish a violation. Mayhall v. Berman & Rabin, P.A., 2014 WL 340215, at *4 (E.D. Mo. Jan. 30, 2014).

Plaintiff's amended complaint alleges three claims under the FDCPA: (1) that UCB "erroneously placed [a] collection account on Plaintiff's credit report and attempted to collect a debt from the wrong individual" in violation of 15 U.S.C. § 1692e; (2) that UCB "failed to send the 30-day validation notice within five (5) days of the initial communication" in violation of 15 U.S.C. § 1692g; and (3) that UCB "communicated with Plaintiff's consumer reporting agency, which is not permitted by law" in violation of 15 U.S.C. § 1692c(b)." (FAC at ¶ 18(a) – (c)).

To prevail on his claims, Plaintiff must prove that: 1) he has been the object of collection activity arising from a consumer debt; 2) UCB qualifies as a "debt collector" under the Act; and 3) UCB violated, by act or omission, a provision of the FDCPA. See Pace v. Portfolio Recovery Associates, LLC, 2012 WL 2398024, at *2 (W.D. Mo. June 25, 2012) (citing Chomilo v. Shapiro, Nordmeyer & Zielke, LLP, 2007 WL 2695795, at *2 (D. Minn. Sept. 12, 2007)).

**Arguments of the parties**

Plaintiff argues summary judgment is appropriate in this case because it is undisputed that he did not owe a debt to UCB. According to Plaintiff, UCB attempted to collect a debt he did not owe by causing its collections account to be placed on his credit reports in violation of § 1692e. (Doc. No. 57 at 2-7) In addition, Plaintiff claims UCB's reporting of the debt to the CRAs is actionable under the FDCPA as an unlawful communication under § 1692c(b). (Id. at 7-8) Plaintiff further argues UCB failed to provide him with written notice about the debt, his right to dispute the debt, and certain other disclosures, within 5 days of its initial communication in violation of § 1692g. (Id. at 8-9)

Lastly, Plaintiff maintains his claims are not time barred. (Doc. No. 57 at 9-10) According to Plaintiff, the limitations period only began to run in June 2013, when he discovered the collections account on his credit report while applying for a loan, or in July 2013, when UCB removed the account from the CRAs – its "last chance" to comply with the FDCPA. (Id. at 11) Plaintiff also makes a "continuing injury" argument, i.e., that each monthly report by UCB to the CRAs is a separate violation for purposes of the FDCPA's statute of limitations. (Id. at 12)

In response to Plaintiff's motion (and as the basis for its own motion for summary judgment), UCB asserts it may not be held liable because Plaintiff has not demonstrated he was the object of any collection activity by UCB, or that UCB engaged in an act or omission prohibited by the FDCPA. Rather, the evidence and undisputed material facts demonstrate that UCB never maintained an account for *this* plaintiff, Joseph W. Martin, never attempted to collect any debt from him, and never reported credit information to the CRAs about him. In fact, no officer, employee, representative, or agent of UCB ever communicated directly with Plaintiff. (Doc. No. 20 at 4-5) Further, even if a violation of the FDCPA did occur, UCB contends that

every claim asserted by Plaintiff arises from conduct in 2009 and is, therefore, barred by the FDCPA's one-year statute of limitations. § 1692k(d). (Id. at 5-8)

Because the Eighth Circuit has held that the FDCPA's statute of limitations is jurisdictional, see Mattson v. U.S. West Communications, Inc., 967 F.2d 259, 262 (8th Cir.1992), the Court will first consider UCB's timeliness argument.

**Statute of limitations**

An action under the FDCPA must be brought "within one year from the date on which the violation occurs." § 1692k(d). UCB maintains that Plaintiff's complaint is time barred because it was filed on March 24, 2014, nearly five years after UCB's allegedly erroneous credit reporting on Plaintiff in 2009. Plaintiff argues the FDCPA's one-year statute of limitations should be equitably tolled because he had no knowledge of UCB's collections account until he was denied a bank loan in 2013. (Doc. No. 57 at 9-10) In support, he argues that Mattson is distinguishable because he "never received any correspondence from UCB" and "had no knowledge of UCB's unlawful activity." (Doc. No. 44 at 10; Doc. No. 57 at 10)[4]

In Mattson, the Eighth Circuit stated, "We are not at liberty to disregard the jurisdictional limitations Congress has placed upon the federal courts, however appealing it might be to interpret section 1692k(d) in such a way as to permit [plaintiff's] action to proceed." 967 F.2d at 262. Several decisions of this Court as well as other district courts in the Eighth Circuit have read

---

[4] In Mattson, the plaintiff filed her complaint against the defendant debt collector on November 27, 1990, alleging that two letters it had sent her violated the FDCPA. The letters were dated November 10, 1989 and November 27, 1989. The defendant moved for summary judgment on the ground that the complaint was filed more than one year from the date on which the letters were mailed. The plaintiff argued that the alleged violation occurred when she received the letters from defendant. The district court ruled the action was time barred. On appeal, the Eighth Circuit affirmed, holding that the violation, if any, occurred when the letter was mailed, since that was the defendant's last opportunity to comply with the FDCPA. "Once [defendant] placed the letters in the mail, its conduct with respect to any violation of the FDCPA was complete." 967 F.2d at 261.

Mattson to hold that the FDCPA's statute of limitations is jurisdictional and cannot be equitably tolled. Lavear v. Barton, 2015 WL 667964, at *2 (E.D.Mo. Feb. 17, 2015) (and cases cited therein).[5]

Moreover, § 1692k(d) does not contain a general discovery rule, that is, an exception providing that the one year limitation period begins to run when a debtor "knows or has reason to know" of a violation of the FDCPA. Stewart v. Bureaus Inv. Grp. No. 1, LLC, 24 F. Supp. 3d 1142, 1159 (M.D. Ala. 2014) (quoting Cooper v. F.A. Mgmt. Solutions, Inc., 2007 WL 4326800, at *4 (M.D.Fla. Dec. 7, 2007) (internal citation and footnote omitted)). "In the absence of an express general discovery rule, a judicial implication of a general discovery rule is precluded." Id. (citing TRW Inc. v. Andrews, 534 U.S. 19, 27-28 (2001)). See also Johnson v. Riddle, 305 F.3d 1107, 1114 n.3 (10th Cir. 2002). Because the FDCPA's statute of limitations is deemed

---

[5] The Court recognizes that Mattson has been criticized by other courts, as Judge Fleissig observed in Harris v. Barton:

> Upon reflection, the Court questions whether ... use of the word "jurisdictional" in [Mattson] was perhaps colloquial. The question of tolling was not before the Court, just the question of when the one year began to run. See Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 940 & n. 14 (9th Cir.2009) (holding that the one year limitations period was subject to equitable tolling, and remarking that the "jurisdictional" statement in Mattson "was made without any real analysis, and we are unsure but what 'jurisdiction' was used in a somewhat colloquial sense"). The large majority of courts that have considered and analyzed the question have concluded that the one year period is subject to tolling. See, e.g., Marshall–Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 327 (7th Cir.2000); Clark v. Bonded Adjustment Co., 176 F.Supp.2d 1062, 1068 (E.D.Wash.2001) (stating "the presumption that statutory time limits are not jurisdictional has not been rebutted by anything in the language or legislative history of the FDCPA"). This Court believes that, given the opportunity to consider the matter directly, the Eighth Circuit would agree with these courts.

Harris, 2014 WL 3701037, at *3. Mattson was also called into doubt in Mader v. United States, 619 F.3d 996, 1002–03 (8th Cir.), *rev'd on other grounds,* 654 F.3d 794 (8th Cir.2010) (en banc). Mattson's continued viability can only be resolved by the Eighth Circuit. Until it does so, Mattson is binding precedent on this Court. The Court also notes that the issue of whether the FDCPA's statute of limitations may be equitably tolled is currently pending before the Eighth Circuit in Hageman v. Barton, No. 14-3665 (8th Cir.).

jurisdictional in the Eighth Circuit, the limitation period is not subject to a general discovery rule and the Court does not address Plaintiff's equitable tolling argument.[6]

In sum, all of the conduct that Plaintiff alleges violated the FDCPA, i.e., the initial credit reporting, failure to send a validation notice, and communication with the CRAs, occurred more than one year before he brought this action. Thus, Plaintiff's FDCPA claims are barred by the one-year statute of limitations.

In an attempt to keep his claims alive, Plaintiff argues that each "re-report" to the CRAs of credit information on UCB's account or failure to correct UCB's wrongful reporting is a separate FDCPA violation which begins a new limitations period. (Doc. No. 44 at 11, 13-15) The Court is not persuaded by this argument, particularly since the evidence of record establishes that the account was first reported to the CRAs by UCB (with the information of Joseph A. Martin) in the same month it was last reported – July 2009. (See Doc. No. 23-1; Martin Aff., Exs. B and E) UCB made no reports of credit information regarding the account from that time until July 3, 2013, when, at Plaintiff's request, UCB sent an AUD to the CRAs asking them to delete the information. (Doc. No. 21-1 at ¶ 16)

Relying on Hyde v. Hibernia Nat. Bank of Jefferson Parish, 861 F.2d 446 (5th Cir. 1988), Plaintiff also argues that an FDCPA violation occurred when he applied for a bank loan and was denied credit in 2013. (Doc. No. 57 at 6-7) Hyde is not dispositive given that the Fifth Circuit was addressing the issue of when a plaintiff's cause of action accrued under a different statute,

---

[6] Even if the limitations period were subject to equitable tolling, however, such tolling would only be applicable "where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, or where the plaintiff in some extraordinary way has been prevented from asserting his or her rights, or has asserted his or her rights mistakenly in the wrong forum." See Glover v. F.D.I.C., 698 F.3d 139, 151 (3rd Cir.2012). Here there is no basis for such findings.

the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a-1681v ("FCRA"). FCRA requires CRAs to maintain "reasonable procedures" for reporting and verifying consumer information to ensure fair and accurate credit reporting. §§ 1681(b), 1681e(a). FCRA requires that claims must be brought within two years "from the date on which liability arises." § 1681p. The Hyde court held that when the claim under FCRA is for intentional non-compliance, the limitations period commences either from the time of injury to the consumer or from the date of the consumer's discovery of the error, whichever is later. Id. at 449. Hyde provides no support for Plaintiff's argument.

Even if Plaintiff's FDCPA claims are not time barred, they fail on their merits as discussed below.

**15 U.S.C. § 1692e**

Plaintiff alleges that UCB "erroneously placed [its] collection account on [his] credit report(s) and attempted to collect a debt from the wrong individual, which they could not legally collect on," in violation of § 1692e. (FAC at ¶ 18 a.) Section 1692e prohibits false and misleading representations or procedures in connection with debt collection, including the false representation of the character, amount or legal status of any debt. § 1692e(2)(A). Plaintiff argues that UCB's attempt to collect a debt from a person who does not owe it misrepresents the "character" or "legal status" of the debt and is actionable under § 1692e(2)(A).[7] UCB does not dispute that it attempted to collect a debt from an individual with a name and social security number very similar to Plaintiff's. UCB does dispute that it ever collected or attempted to collect a debt from Plaintiff and argues that any alleged error that occurred was attributable to the CRAs.

---

[7] UCB contends this is a new claim which was not included in Plaintiff's amended complaint and must, therefore, be denied. (See Doc. No. 61 at 4 n.3, 14-15) The FDCPA lists conduct that is in violation of § 1692e, without limiting its general application. See § 1692e(1)–(16).

Plaintiff responds that even if this were true, it is not relevant because the FDCPA is a strict liability statute, and that "[u]nder the FDCPA, liability is imputed to [UCB] for either not having procedures in place to ensure proper credit reporting or for accidentally placing Plaintiff in collections." (Doc. No. 57 at 3) Plaintiff is correct that the FDCPA is a strict liability statute. What this means, however, is that a consumer need not show intentional conduct by the debt collector to be entitled to damages. See, e.g., Picht v. John R. Hawks, Ltd., 236 F.3d 446, 451 (8th Cir. 2001). It does not excuse Plaintiff from establishing the elements of his claim, i.e., that he was the object of collection activity or that UCB engaged in an act or omission prohibited by the Act. UCB's unrebutted evidence of record demonstrates it never reported credit information about Plaintiff to the CRAs, except to issue the AUD in 2013. Thus, UCB has no liability under § 1692e.

**15 U.S.C. § 1692c(b)**

Plaintiff argues that UCB's reporting to the CRAs of a debt belonging to a different individual on Plaintiff's credit reports is actionable under § 1692c(b) as an unlawful communication. (Doc. No. 57 at 7-8) The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." § 1692a(2). Under § 1692c(b), debt collectors are ordinarily permitted to "communicate" with CRAs. There is also an exception for communications made with the consumer's consent:

(b) Communications with third parties.

Except as provided in section 1692b of this title, *without the prior consent of the consumer given directly to the debt collector*, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person *other than* the consumer, his attorney, *a consumer reporting agency* if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." (Emphasis added.)

§ 1692c(b).

The record in this case shows that UCB reported credit information for Joseph A. Martin, one time, on August 13, 2009. UCB had no communication with the CRAs regarding Plaintiff until July 3, 2013, when it submitted the AUD to delete the information from Plaintiff's credit file. (DSOF at ¶¶ 8, 15) Significantly, the AUD was submitted at Plaintiff's request and with his consent (DSOF ¶¶ 14-15), thereby implicating § 1692c(b)'s exception for consumer consent. For this reason and because the communication with the CRAs was permissible, Plaintiff's claim under § 1692c(b) fails as a matter of law.[8]

**15 U.S.C. § 1692g**

The FDCPA requires a debt collector to send a consumer written notice containing information validating the consumer's debt within five days of the debt collector's "initial communication with a consumer" unless the information is included in the initial communication. § 1692g(a). Plaintiff argues UCB violated § 1692g by failing to send him notice of his dispute rights within five days of reporting the debt to a CRA. Plaintiff acknowledges UCB had no direct communication with him and never sent him any written correspondence (except through counsel). (Doc. No. 57 at 8) Rather, Plaintiff asserts the "initial communication with a consumer" occurred when UCB allegedly reported the debt to the CRAs in July 2009. In support of his contention, he cites to case law holding that a report to a CRA is a

---

[8] UCB also argues that because it is undisputed that Plaintiff does not owe a debt to UCB, he is not a "consumer" for purposes of the FDCPA and lacks standing to sue for violations of § 1692c(b). A number of cases have held that only a consumer has standing to sue under § 1692c(b). See, e.g., Montgomery v. Huntington Bank, 346 F.3d 693, 697 (6th Cir.2003) (citing Wright v. Fin. Serv. of Norwalk, Inc., 22 F.3d 647, 649 n. 1 (6th Cir.1994) (en banc) (stating in dicta that only a "consumer" has standing to sue for a violation of the subchapter of § 1692c which prohibits a debt collector from, *inter alia*, contacting a consumer at unusual times or places)); Mantell v. Feingold & Levy, 1997 WL 45313, at *3 (N.D.Ill. Jan. 30, 1997) (same). However, this Court has held that where a non-consumer alleges a direct harm and actual damages from a communication proscribed by §1692c(b), such party has standing to sue. See Thomas v. Consumer Adjustment Co., 579 F. Supp. 2d 1290, 1299 (E.D. Mo. 2008). The Court need not address UCB's argument since the communication here was permissible.

"communication" or "collection activity" that may give rise to liability under the FDCPA. See, e.g., Taylor v. Midland Credit Management, Inc., 2008 WL 544548, at *3 (W.D.Mich. Feb. 26, 2008) and Sullivan v. Equifax, 2002 WL 799856, at *4 (E.D.Pa. Apr. 12, 2002). However, the crux of the dispute here is not whether reporting debt is a "communication" or "debt collection activity," but whether it is a "communication with a consumer" that triggers the validation notice requirements of § 1692g(a).

This Court has held that credit reporting does not qualify as an initial communication with a consumer for purposes of § 1692g(a). See Perry v. Trident Asset Management, L.L.C., 2015 WL 417588 (E.D. Mo. Feb. 2, 2015). The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." § 1692g(a)(3). The definition of "consumer" does not include CRAs, which are business entities rather than "natural person[s]." Id. Thus, any party to whom a debt is reported but who is not at least allegedly obligated to pay the debt is not a "consumer" under the FDCPA. Other courts within the Eighth Circuit and elsewhere have held likewise. See, Edeh v. Aragon Collection Agency, LLC, 2011 WL 2963855 (D.Minn. June 20, 2011); Toth v. Cavalry Portfolio Servs., LLC, 2013 WL 5658168 (D.Nev. Oct. 16, 2013); Robinson v. TSYS Total Debt Mgmt., Inc., 447 F.Supp.2d 502 (D.Md. 2006). Thus, Plaintiff's claim under § 1692g(a) fails as a matter of law.

**Conclusion**

For all these reasons, UCB's motion for summary judgment will be granted and Plaintiff's motion for summary judgment will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [19] is **GRANTED** and Plaintiff's Motion for Summary Judgment [55] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike [35] is **DENIED**.

**IT IS FINALLY ORDERED** that Defendant's Motion for Sanctions Pursuant to Fed.R.Civ.P. 37(c) [59] is **DENIED**.

A separate Judgment will accompany this Memorandum and Order.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 14th day of July, 2015.